**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DAVID POWELL,

          Plaintiff,

          v.

GREENTREE,

          Defendant.

Case No.  08-CV-00097

Honorable John A. Nordberg

## MOTION FOR LEAVE TO AMEND PLAINTIFF'S FIRST AMENDED COMPLAINT

      Plaintiff David Powell, by and through his counsel Paul, Hastings, Janofsky and Walker LLP, hereby respectfully requests that this Court grant this motion for leave to amend his First Amended Complaint as reflected in the Second Amended Complaint, attached hereto as Exhibit A, and in support states as follows:

      1.      Plaintiff David Powell, initially proceeding *pro se*, filed a complaint alleging breach of contract against GreenTree Servicing LLC ("GreenTree" or "Defendant") in the Circuit Court of Cook County, Illinois, on October 31, 2007.

      2.      In response, Defendant filed a notice of removal on November 16, 2007, alleging that Plaintiff's complaint implicated a federal question, and that this Court had original jurisdiction pursuant to 28 U.S.C. § 1331.

      3.      On November 20, Defendant moved to dismiss Plaintiff's complaint.

      4.      On November 26, Judge Manning denied Defendant's motion to dismiss and remanded the matter to the Circuit Court of Cook County on the grounds that the Court lacked subject matter jurisdiction.

      5.      On remand, Defendant filed a motion to dismiss in the Circuit Court of Cook County on December 5, 2007.

6.      In response to the Defendant's second motion to dismiss, Plaintiff, still proceeding *pro se*, filed a First Amended Complaint in which he alleged violations of a federal statute.

7.      Defendant then filed a second notice of removal on January 7, 2008, and filed a motion to dismiss Plaintiff's First Amended Complaint the next day, on January 8, 2008.

8.      Thereafter, the Court assigned the undersigned counsel to represent the Plaintiff and ordered Plaintiff to respond to Defendant's motion to dismiss or file a motion for leave to amend Plaintiff's First Amended Complaint.

9.      Federal Rule of Civil Procedure 15(a) states that the Court "should freely give leave when justice so requires." *Id.*

10.     That standard is amply met here.  Justice requires that Plaintiff who, for the first time in this case has counsel, be allowed to amend his Complaint with his counsel's assistance.

WHEREFORE, Plaintiff David Powell respectfully requests that this Court enter an order granting his request to amend his First Amended Complaint as reflected in the Second Amended Complaint that is attached as Exhibit A to this Motion.

Respectfully submitted,


By:  /s/ Gregory S. Otsuka
     Gregory S. Otsuka

Richard A. Chesley (6240877)
Gregory S. Otsuka (6270388)
Christian M. Auty (6285671)
Paul, Hastings, Janofsky & Walker LLP
191 North Wacker Drive
30th Floor
Chicago, IL  60606
Telephone: (312) 499-6000
Facsimile:  (312) 499-6100

Attorneys for Plaintiff

Dated: May 27, 2008

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 27, 2008, he served a copy of the foregoing

Motion for Leave to Amend Plaintiff's First Amended Complaint and exhibits upon the attorneys

below by electronic filing using the U.S. District Court for the Northern District of Illinois

Electronic Case filing System.

James D. Adducci
Email: jadducci@adlmb.com
Marshall L. Blankenship
Email: mblankenship@adlmb.com
Adducci, Dorf, Lehner, Mitchell & Blankenship, P.C.
150 North Michigan Avenue
Suite 2130
Chicago, IL 60601
Telephone: (312) 781-2800

/s/ Gregory S. Otsuka
Gregory S. Otsuka

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DAVID POWELL,

              Plaintiff,

              v.                            Case No.  08-CV-00097

GREENTREE,                          Honorable John A. Nordberg

              Defendant.

### PLAINTIFF DAVID POWELL'S SECOND AMENDED COMPLAINT

Plaintiff David Powell, by and through counsel, Paul, Hastings, Janofsky and Walker LLP, hereby files his Second Amended Complaint, and states as follows:

### PARTIES

1.      On information and belief, Green Tree Servicing, LLC ("Defendant") is a Minnesota corporation with its principal place of business and headquarters located in Minnesota.

2.      David Powell is a citizen and resident of Indiana.

### GENERAL ALLEGATIONS

3.      On May, 21, 1998 Plaintiff entered into a retail installment and security agreement ("Retail Agreement") with WaterWerks Boat Sales, Inc. ("WaterWerks"), for the purchase of a boat, boat motor and trailer.  The parties executed the Retail Agreement in Country Club Hills, IL.  (*See* Exhibit 1, Retail Agreement.)

4.      The terms of the Retail Agreement required Plaintiff to make one hundred and eighty (180) monthly payments of approximately two hundred and ninety-six dollars ($296) beginning on September 20, 1998.  (*Id.*)  In addition, WaterWerks retained a security interest in the boat, boat motor, and trailer.  (*Id.*)

5.      WaterWerks and Plaintiff entered into another agreement on May 21, 1998, whereby the date of Plaintiff's first payment was extended by one hundred and twenty (120) days from the date specified in the Retail Agreement.  (*See* Exhibit 2, Deferred Payment Agreement.)

6.      On May 26, 1998, Green Tree Financial Servicing Corporation also known as Conseco Servicing ("Green Tree Financial"), notified Plaintiff that it had purchased the Retail Agreement from Waterwerks.  (*See* Exhibit 3, Green Tree Notice of Assignment.)

7.      On information and belief, as of May 26, 1998, Green Tree Financial was owned by Conseco, Inc., and is a predecessor-in-interest to the Defendant.

8.      Over the next two years, Plaintiff consistently made payments according to the terms of the Retail Agreement.  Beginning in or about the year 2001, Plaintiff would request and Green Tree Financial would agree to loan extensions.  Specifically, the parties would agree that Plaintiff would not be required to make monthly payments for a period of two months, without defaulting on the Retail Agreement.

9.      On information and belief, Conseco, Inc. and certain of its subsidiaries filed a petition for bankruptcy protection in the Bankruptcy Court for the Northern District of Illinois on December 17, 2002.  On March 14, 2003, the Bankruptcy Court issued an order approving the sale of certain assets, including Green Tree Financial, to CFN Investment Holdings LLC.  As part of this sale, Green Tree Financial was reorganized and renamed Green Tree Servicing LLC.

10.     As a result of these bankruptcy proceedings, the Retail Agreement was assigned to the Defendant.

11.     From 2003 until 2006, Defendant routinely granted Plaintiff loan extensions upon Plaintiff's request.  Specifically, upon Plaintiff's request for an extension, Defendant would fax Plaintiff a form contract, which Plaintiff would execute and return via facsimile.

12.     Plaintiff requested and received one two-month loan extension each year from 2001 until 2006.

13.     On or about April 25, 2007, Plaintiff requested a loan extension from Defendant's agent, known to Plaintiff as Angela.  (*See* Exhibit 4, April 25, 2007 Certified Letter from Plaintiff to Defendant.)

14.     Plaintiff was instructed by the Defendant's agent, known to Plaintiff as Angela, that Plaintiff's request for a loan extension could only be approved when Plaintiff's scheduled payment was thirty days late.  (*Id.*)

15.     In response, Plaintiff made a monthly payment to Defendant, and sent a letter to Defendant requesting explanation of Defendant's policies regarding loan extensions.  (*Id.*)

16.     From May until October 2007, Plaintiff continually requested a loan extension from Defendant.

17.     On October 24, 2007, Plaintiff contacted Defendant by telephone to determine the status of his request.  Defendant's agent, known to Plaintiff as Betes, informed Plaintiff that his loan extension request had been approved for October 25, 2007, and that Defendant would not attempt to repossess Plaintiff's boat, boat motor, or trailer.  (*See* Exhibit 5, Affidavit of David Powell; Exhibit 6, Affidavit of Carl Hasler.)

18.     On October 29, 2007, despite Defendant's representations five days earlier, Defendant's agent, Angela, left a voicemail for Plaintiff indicating that repossession efforts were

underway and that Plaintiff was to contact Angela immediately to arrange for repossession of the boat, boat motor, and trailer.  (*See* Exhibit 5.)

19.     On October 30, 2007, Defendant's agent, Betes, left a voicemail for Plaintiff demanding that Plaintiff contact Betes as soon as possible.  (*See* Exhibit 5.)

20.     Plaintiff returned Betes's call on October 30, 2007.  Betes demanded that Plaintiff immediately send the Defendant one-hundred and five dollars and forty-seven cents ($105.47).  Plaintiff reminded Betes of his representation on October 24 that Defendant would not repossess and the Defendant's prior approval of a loan extension, but Betes persisted in his request for immediate transmittal of funds.  Betes later telephoned Plaintiff to notify him that the amount due was ninety-seven dollars and fifty-six cents ($97.56).  (*See* Exhibit 5.)

21.     Plaintiff immediately made the payment on October 30, 2007.  (*See* Exhibit 7, October 30, 2007 National City Letter.)

22.     As a result of Defendant's misrepresentations, Plaintiff was forced to make immediate payment using a check-by-phone service, resulting in additional and unforeseen costs to Plaintiff.

23.     As a result of Defendant's misrepresentations, Plaintiff suffered emotional distress.

24.     On information and belief, as of October 30, 2007, Plaintiff was delinquent in his payments on the Retail Agreement and Defendant furnished this negative information – *i.e.*, that Plaintiff was delinquent in his payments – to Experian and TransUnion.  (*See* Exhibit 8, Consumer Reporting Agency Reports.)

25.     Experian and TransUnion are consumer reporting agencies as that term is defined in the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.  See* 15 U.S.C. § 1681a(f) (defining consumer reporting agency).

26.     At all times, Defendant was a financial institution that extends credit and regularly and in the ordinary course of business furnishes information to consumer reporting agencies.

27.     Defendant never provided Plaintiff written notice that Defendant furnished negative information to Experian and TransUnion.

28.     Furthermore, Defendant has committed a pattern of willful non-communication with Plaintiff, including failure to send Plaintiff monthly invoices for payment pursuant to the Retail Agreement, and refusal to send Plaintiff certain tax information regarding the Retail Agreement.

## COUNT ONE
### (Negligent Misrepresentation)

29.     Plaintiff reincorporates paragraphs 1 through 28 of his Second Amended Complaint as though fully set forth herein.

30.     In its capacity as a loan servicing company, Defendant is in the business of providing facts and information for purchasers and sellers of consumer products, and owes a duty to Plaintiff to provide accurate information.

31.     By repeatedly granting Plaintiff loan extensions, Defendant assumed a duty to provide accurate information regarding the status of a requested loan extension.

32.     Defendant negligently misrepresented that Plaintiff received a loan extension, with the intention that Plaintiff rely upon Defendant's misrepresentation.

33.     Plaintiff reasonably relied on this information in delaying payment to Defendant.

34.     Defendant's negligent misrepresentation resulted in economic harm and emotional distress to Plaintiff.

## COUNT TWO
**(Willful Violation of Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*)**

35.     Plaintiff reincorporates paragraphs 1 through 28 of his Second Amended Complaint as though fully set forth herein.

36.     Defendant was obligated to comply with 15 U.S.C. § 1681s-2(a)(7)(A)(i).

37.     Defendant willfully, knowingly, and intentionally violated 15 U.S.C. § 1681s-2(a)(7)(A)(i), by failing to notify Plaintiff, in writing, that Defendant furnished negative information regarding its extension of credit to Plaintiff to Experian and TransUnion.

38.     This violation caused actual damages to Plaintiff.

## COUNT THREE
**(Negligent Violation of Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*)**

39.     Plaintiff reincorporates paragraphs 1 through 28 of his Second Amended Complaint as though fully set forth herein.

40.     Defendant was obligated to comply with 15 U.S.C. § 1681s-2(a)(7)(A)(i).

41.     Defendant negligently violated 15 U.S.C. § 1681s-2(a)(7)(A)(i), by failing to notify Plaintiff, in writing, that Defendant furnished negative information regarding its extension of credit to Plaintiff to Experian and TransUnion.

42.     This violation caused actual damages to Plaintiff.

WHEREFORE, Plaintiff David Powell respectfully requests this Court enter judgment in his favor and against the Defendant, grant actual and statutory damages to the Plaintiff for Defendant's negligent misrepresentation and violations of the Fair Credit Reporting Act, as well as costs and attorney's fees incurred in maintaining this action, and for such other and further

relief as this Court deems just and proper.

Respectfully submitted,


By:  /s/ Gregory S. Otsuka
      Gregory S. Otsuka

Richard A. Chesley (6240877)
Gregory S. Otsuka (6270388)
Christian M. Auty (6285671)
Paul, Hastings, Janofsky & Walker LLP
191 North Wacker Drive
30th Floor
Chicago, IL  60606
Telephone:  (312) 499-6000
Facsimile:  (312) 499-6100

Attorneys for Plaintiff

Dated: May 27, 2008

# Exhibit 1 to Complaint

| Buyer (Name and Address) | Seller (Name and Address) |
|---|---|
| (Omitted) Lansing, IL 60438 | (Omitted) Country Club Hills, IL 60478 |

"You" and "your" mean each Buyer above, and each guarantor, jointly and individually

"We" and "us" mean the Seller above, its successors and assigns

**SALE:** You agree to purchase from us, on a time basis, subject to the terms and conditions of this contract and security agreement (Contract), the goods (Goods) and services described below. The Goods are sold in their present condition, together with the usual accessories and attachments.

| Description of Goods or Services Purchased | Serial or Unit No | Motor or Cabinet No | Price of Each Unit |
|---|---|---|---|
| New 1998 Bayliner Trophy 2052 | Serial# USCA19FDK798 | | |
| New 1998 Mercruiser 4.3 Motor | Serial# OL040843 | | |
| New 1998 Escort ET22GAB Trailer | Serial# 405222LAOWM000019 | | |

Description of Other Collateral
(Not household goods)

**PROMISE TO PAY AND PAYMENT TERMS:** You promise to pay us the Amount Financed as disclosed below, plus finance charges accruing on the unpaid balance at the Annual Percentage Rate disclosed below per year from today's date until paid in full. Finance charges accrue on a 365 day basis. You agree to pay this Contract according to the payment schedule shown in the TRUTH IN LENDING DISCLOSURES. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

**MINIMUM FINANCE CHARGE:** You agree to pay a minimum finance charge of $ _____ if you pay this Contract in full before we have earned the minimum finance charges.

**DOWN PAYMENT:** You also agree to pay, or apply to the Cash Price, on or before today's date, any cash, rebate and net trade in value described in the ITEMIZATION OF AMOUNT FINANCED.

## TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | AMOUNT FINANCED The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE The total cost of your purchase on credit, including your down payment of $ 1,152.50 |
|---|---|---|---|---|
| 10.00 % | $ 26,431.40 | $ 26,951.59 | $ 53,382.99 | $ 54,535.49 |

**Payment Schedule:** Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 180 | $296.55 | Monthly Payments Beginning 09/20/98 |

**Security:** You are giving a security interest in the Goods purchased.
☐ (description of other property)

**Prepayment:** If you pay off early, you may have to pay a Minimum Finance Charge, and you will have to pay an acquisition fee.

**Contract Provisions:** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

**CREDIT INSURANCE:** Credit life, credit disability (accidental and health), and any other insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below ONLY the coverages you have chosen to purchase.

Credit Life: Insured
☐ Single ☐ Joint  Prem $ N/A  Term _____

Credit Disability: Insured
☐ Single ☐ Joint  Prem $ N/A  Term _____

Your signature below means you want (only) the insurance coverage(s) quoted above. If none are quoted, you have declined any coverages we offered.

N/A _____ N/A
Buyer _____ Date _____ Buyer _____ Date

N/A
Buyer _____ Date

☐ **PROPERTY INSURANCE:** You must insure the Property securing this Contract. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The deductible amount of this insurance may not exceed $ N/A . If you got insurance from or through us you will pay $ N/A for _____ of coverage.

This premium is calculated as follows:
☐ Fire, Theft and Combined Additional Coverage $ N/A

## ITEMIZATION OF AMOUNT FINANCED

| | |
|---|---|
| Goods and/or Services Price (including sales tax of $ 1,866.59 ) | $ 27,951.59 |
| Service Contract, Paid to: | |
| **Cash Price** | $ 27,951.59 |
| Less: Manufacturer's Rebate | $ 1,000.00 |
| Less: Cash Down Payment | $ 152.50 |
| Trade-In Allowance $ -0- | |
| Less: Amount Owing $ -0- | |
| To: N/A | |
| Net Trade-In | $ -0- |
| **Total Down Payment** | $ 1,152.50 |
| **Unpaid Balance of Cash Price** | $ 26,799.09 |
| (Cash Price Less Total Down Payment) | |
| Paid to Public Officials - Filing Fees | $ 152.50 |
| Insurance Premiums | $ -0- |
| Paid to Seller - Document Prep Fee | $ -0- |
| To: | $ -0- |
| To: | $ -0- |
| To: | $ -0- |
| To: | $ -0- |
| **Total Other Charges** | $ 152.50 |
| (including Amounts Paid to Others on Your Behalf) | |
| Less Prepaid Finance Charges | $ -0- |
| **Amount Financed** | $ 26,951.59 |
| (Unpaid Balance of Cash Price Plus Other Charges) | |

**NOTICE TO THE BUYER**
(1) Do not sign this agreement before you read it or if it contains any blank spaces. (2) You are entitled to an exact copy of the agreement you sign. (3) Under the law you have the right, among others, to pay in advance the full amount due and to obtain under certain conditions a partial refund of the finance charge.

BY SIGNING BELOW BUYER AGREES TO THE TERMS ON PAGES 1 AND 2 OF THIS CONTRACT AND ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS RETAIL INSTALLMENT CONTRACT.

Buyer Signature _____ 5-21-98 Date

Signature _____ Date

Signature _____ Date

**EXECUTION AND ASSIGNMENT:** This Contract and Security Agreement is executed by the Seller and assigned to Green Tree Financial Servicing Corporation, 332 Minnesota Street, St. Paul, MN 55101, the Assignee, phone 1-800-241-3040. This assignment is made under the terms of a separate agreement.

Seller By _____ Date 5-21-98

ILLINOIS RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT

© 1996 Bankers Systems, Inc. St Cloud MN Form GTC-51-US IL 10/8/97

GT-82-14-001 (1/97) (page 1 of 2)

GOODS AND SERVICES – NOT FOR HOME IMPROVEMENT OR MANUFACTURED HOMES

## ADDITIONAL TERMS OF THIS CONTRACT AND SECURITY AGREEMENT

**GENERAL TERMS:** You have been given the opportunity to purchase the Goods and described services for the Cash Price or the Total Sale Price. The Total Sale Price is the total price of the Goods and any services if you buy them over time. You agreed to purchase the items over time. The Total Sale Price shown in the TRUTH IN LENDING DISCLOSURES assumes that all payments will be made as scheduled. The actual amount you will pay may be more or less depending on your payment record.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee, that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that is contrary to this provision, we will, instead, apply it first to reduce the principal balance, and when the principal has been paid in full, refund it to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract.

**PREPAYMENT:** You may prepay this Contract in full or in part at any time. Any partial prepayment will not entitle you to default in the future. You agree to pay a $12.00 acquisition fee if you prepay in full.

A refund of any prepaid, unearned insurance premiums may be obtained from us or from the insurance company named in your policy or certificate of insurance.

**SECURITY:** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Goods purchased and any other collateral described above, and all accessions, attachments, accessories, and equipment placed in or on the Goods or other collateral, together with Property, and proceeds of the Property. Our interest will not extend to consumer goods unless you acquire rights to them within 10 days after we enter into this Contract, or they are installed in or attached to the Goods. We may insert the identifying number or marks of the Property and the due date of the first installment if the Property is delivered after you sign this Contract.

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** By giving us a security interest in the Property, you represent and agree to the following:

A. You will defend our interests in the Property against claims made by anyone else. You will do whatever is necessary to keep our claim to the Property ahead of the claim of anyone else.

B. The security interest you are giving us in the Property comes ahead of the claim of any other of your general or secured creditors. You agree to sign any additional documents or provide us with any additional information we may require to keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.

C. You will keep the Property in your possession in good condition and repair. You will use the Property for its intended and lawful purposes. Unless otherwise agreed in writing, the Property will be located at your address listed on page 1 of this Contract.

D. You will not attempt to sell the Property (unless it is property identified inventory) or otherwise transfer any rights in the Property to anyone else, without our prior written consent. You will not permit the Property to become attached to any real estate without first providing us an opportunity to preserve our first priority status.

E. You will pay all taxes and assessments on the Property as they become due.

F. You will notify us of any loss or damage to the Property. You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**DEFAULT:** You will be in default on this Contract if any one of the following occurs (except as prohibited by law).

A. You fail to perform any obligation that you have undertaken in this Contract.

B. We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

If you default, you agree to pay our costs for collecting payments owing, including, without limitation, court costs and reasonable attorneys' fees as permitted by a court of law, that we incur to collect or enforce this Contract, and fees for repossession, repair, storage and sale of the Property securing this Contract.

If an event of default occurs as to any one of you, we may exercise our remedies against any or all of you.

**REMEDIES:** If you are in default on this Contract, subject to any right to cure that you may exercise, we have all of the remedies provided by law and this Contract.

A. We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges when you are in default on this Contract (or at least 30 days or if you have abandoned or destroyed the Property or if we have reasonable cause to believe that you are about to leave the state.

B. We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. Any amount we pay will be added to the amount you owe us and will be due immediately. This amount will earn finance charges from the date paid at the post-maturity rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.

C. We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

D. We may immediately take possession of the Property by legal process, or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises. We may then sell the Property and apply what we receive as proceeds by law to our reasonable expenses and then toward your obligations.

E. Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not waive our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that, subject to your right to recover such property, we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above.

**ARBITRATION:** All disputes, claims, or controversies arising from or relating to this Contract or the relationships which result from this Contract, or the validity of this arbitration clause or the entire Contract, shall be resolved by binding arbitration by one arbitrator selected by us with your consent. This arbitration agreement is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes through a court, but that they prefer to resolve their disputes through arbitration, except as provided herein. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL, EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY US (AS PROVIDED HEREIN). The parties agree and understand that all disputes arising under case law, statutory law, and all other laws including, but not limited to, all contract, tort, and property disputes, will be subject to binding arbitration in accord with this agreement. The parties agree and understand that the arbitrator shall have all powers provided by the law and the Contract. These powers shall include all legal and equitable remedies, including, but not limited to, money damages, declaratory relief, and injunctive relief. Notwithstanding anything hereunto the contrary, we retain an option to use judicial or non-judicial relief to enforce a security agreement relating to the property, goods or services secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation secured by the property, goods or services or to foreclose on the property, goods or services. Such judicial relief would take the form of a lawsuit. The institution and maintenance of an action for judicial relief in a court to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement, shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this Contract, including the filing of a counterclaim in a suit brought by us pursuant to this provision.

**INSURANCE:** You agree to buy property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the PROPERTY INSURANCE section, or as we will otherwise require. You will name us as loss payee on any such policy. In the event of loss or damage to the Property, we may require additional security of assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. You will keep the insurance in full force and effect until this Contract is paid in full.

**COLLATERAL PROTECTION INSURANCE NOTICE:** Unless you provide us with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our agreement. If we purchase insurance for the collateral, you will be responsible for the premiums for that insurance, including interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The premiums may be added to your total outstanding balance or obligation. The premiums may be more than the premiums for insurance you may be able to obtain on your own.

**OBLIGATIONS INDEPENDENT:** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following.

A. You must pay this Contract even if someone else has also signed it.

B. We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.

C. We may release any security and you will still be obligated to pay this Contract.

D. If we give up any of our rights, it will not affect your duty to pay this Contract.

E. If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**WARRANTY:** Warranty information is provided to you separately.

**WAIVER:** To the extent permitted by law, you agree to give up your rights to require us to do certain things. We are not required to: (1) demand payment of amounts due; (2) give notice that amounts due have not been paid, or have not been paid in the appropriate amount, time or manner; or, (3) give notice that we intend to make, or are making, this Contract immediately due, subject to the limitations described in the REMEDIES section.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**Exhibit 2 to Complaint**

**DEFERRED PAYMENT**
**ADDENDUM TO**
**CONSUMER FINANCE RETAIL INSTALLMENT CONTRACT**
**AND SECURITY AGREEMENT**

*Fax# 1-800-247-7353*

*Attn: Heather S.*

We the undersigned do hereby agree to the following terms incorporated into the Consumer Finance Retail Installment Contract and Security Agreement (hereinafter "Contract") dated 5/21 1998 and entered into between ____David M. Powell____ (hereinafter "Buyer") and ____WaterWerks Boat Sales, Inc.____ (hereinafter "Seller") and assigned to Green Tree Financial Servicing Corporation (hereinafter "Green Tree") for the purchase of a New 1998 Bayliner Trophy 2052, Mercury 4.3 Motor, Escort BT22CAB Trailer (year, make, model, description of goods).

Buyer(s) agree the first payment due under the contract will be deferred for __120__ days ("Deferral Period") so that the payments in the amount of $___296.55___ shall be paid starting approximately __120__ days from the Contract date and will be paid thereafter each month until all the payments have been made.

Buyer(s) further agree the interest stated in the Contract shall begin to accrue on the outstanding unpaid balance of the Contract from the date of the Contract. Therefore, interest will accrue during the __120__ day Deferral Period. Your monthly payments will be allocated to payment of interest accrued during this Deferral Period and any other accrued interest until the accrued interest is repaid. When the accrued interest is repaid, the monthly payments will be allocated to the unpaid principal balance and interest according to the Contract.

This addendum to the Contract will be in full force and effect as of the day signed below. Except as hereby amended, all of the terms of the Contract shall remain in full force and effect.

5-21-98
_____
Date

_____
Buyer

_____
Date

_____
Buyer

X 5-21-98
_____
Date

X _____
Seller

*Thanks!*

OFD-402 (11/96)

**Exhibit 3 to Complaint**

GREEN TREE

Date: 5/26/98

Dear Customer:  DAVID M. POWELL

We would like to take this opportunity to welcome you as a customer of Green Tree. As you know we have been selected to handle your new retail installment contract.  We are happy to have you as one of our valued customers and want to thank you for this opportunity to serve you.

The Notice of Assignment printed below is for your information.  Perhaps you will want to retain it with your copy of the contract for future reference.

Our job is to look after your needs personally and help you in any way we can.  If you have any problems or questions about your account, please get in touch with us.

Sincerely,

HEATHER SIENE  82625

## NOTICE

We may communicate information about you to one or more of our affiliate corporations which are owned or controlled by Green Tree Financial Corporation.  Under the federal Fair Credit Reporting Act, you have a right to prevent this communication of information about you, except for the communication of information relating solely to your credit transaction with us or our experiences with you.  You may direct us not to communicate information about you to our affiliates by sending a written request to the address below.

We may also furnish information about your account to one or more consumer reporting agencies (credit bureaus).  If you dispute the accuracy or completeness of information furnished by us, please send a detailed written statement regarding your dispute to:

Green Tree Financial
P.O. Box 64135
St. Paul, MN 55164-0135

## NOTICE OF ASSIGNMENT

_____ ("Green Tree"), has purchased a retail installment contract from
WATERWERKS BOAT SALES, INC. _____. Your contract calls
for __180__ monthly payments of $ __296.55__ beginning _____ 9/25/98 .
Payments should be made to Green Tree with the statement and envelope provided to you monthly.  All correspondence should be directed to: Green Tree, Consumer Finance Division, 332 Minnesota Street, Suite 670, St. Paul, MN 55101

Your account number with Green Tree is ___14771672-4___ and should be referenced on all correspondence. If you have not recieved your invoice by the time your first payment is due, please use the following "coupon" and enclosed envelope when sending your initial payment to our office.

· · · · · · · · · · · · · · · · · · · · · · · · · · · Detach Here for Payment · · · · · · · · · · · · · · · · · · · · · · · · · · ·

GREEN TREE

| | |
|---|---|
| | ___9/25/98___ |
| | Due Date |
| Name  DAVID M. POWELL _____ | Payment Amount ___296.55___ |
| _____ | |
| Address _1612 186TH ST_____ | Total _____ |
| _LANSING_____IL 60438_ | Account Number _14771672-4_ |

CONSUMER FINANCE -  CENTRAL

JCWEL2Z1
GT-36-00-003 (11/97)

**Exhibit 4 to Complaint**

Mr. David Schwartz
Greentree Servicing
345 St. Peter Street
St. Paul Minn 55102

April 25th 2007

Mr. Schwartz,

I was instructed to write concerning an extension request on my boat loan the representative's name is Angela no last name was given this writer I believe she can be located in the loan division. I find this unusual as I in the past normally would recieve a two month extension simply by requesting it There was mention of past litigation, hence her instructions to write you

I did explain to Angela, that in the past no matter the level of litigation, I was granted the extension. As of this date the loan payment is 25 days late, in previous requests I was told the loan had to be 30 days late, upon which the documents for the two month extension would be sent by fascimile. I am now wondering if I will be given the same opportunity for said extension, and if not a reason for any denial of my request herein My account No is 147716724, please inform this writer as to the status of my request

Thank-You
Mr. David Powell
P.O. Box 5282
Lansing, IL 60439

Sent V I A U S Reg Mail
Reciept No. 7006 0100 0007 0066 8977

**Exhibit 5 to Complaint**

AFFIDAVIT OF MR DAVID POWELL

I Mr David Powell being over the age of eighteen and duly sworn do hereby submit this affidavit and if called to testify on its contents would freely do so On the 29th of October 2007 I recieved a voicemail message as listed in exhibit 3. I returned the call and asked the question is it your intent to start reposession? I was instructed to call Mr Betes. I informed Angelica I had a dental appointment On the October 30th 2007 I called Mr Betes and informed I was under Doctors care. mr. Betes went into his request for the same information previously given to him. Mr Betes the informed me that a sum of money was to be sent in the amount of 105.47. I asked Mr. Betes about his guarantee of this loan extension and reminded him the conversation was witnessed.Mr. Betes ignored this Mr Betes called again and told me he had made a mistake. I was now told by Mr. Betes I was to remit a sum of 97.56. I again reminded Mr. Betes of his guarantee of the 25th, Mr. Betes again ignored his promise of a loan extension.

Affiant Further Saith Not
M r. David Powell Plantiff Pro-Se

**Exhibit 6 to Complaint**

AFFIDAVIT OF MR CARL HASLER

I Mr. Carl Hasler, being over the age of eighteen and duly sworn do hereby submit this affidavit and if called testify on its contents would freely do so On the twentyfourth of October 2007, I was a witness to conversation between Mr. David Powell and an employee of a finance company known as Betes. In this conversation Mr. Powell informed employee Betes no fewer than three times that I Mr. Carl Hasler would witness this conversation, Betes was clearly aware of this and commented to Mr. Powell [Betes Quote; Don't put me on the spot] Mr. Powell asked if there were any attempts to repossess his boat and trailer, and asked Betes the date of his request for a loan extension. [Betes Answer quote] your loan extension is approved for the twentyfifth of October 07. Mr. Powell then asked again about reposession {Bates Quote there will be no repo activity }

Affiant Further Saith Not

Mr. Carl Hasler

*Carl Hasler*

**Exhibit 7 to Complaint**

National City Bank
Munster Office
9175 Calumet Avenue
Munster, IN 46321
(219) 836-2403

October 30, 2007

Re: Check by phone completed by David Powell

To: Greentree (Conseco)

To Whom It May Concern,

This letter is to acknowledge that, I, Tony Santana, verified Mr. Powell's bank account #, and National City Banks routing # for the purpose of paying a check by phone.

I spoke with a representive from Greentree
to confirm Mr. Powell's check by phone information.

If you have any questions I can be reached at 219-836-2403 of by email at
louis.santana@nationalcity.com.

Sincerely,

Tony Santana
Vice President
Manager
Munster Banking Center

**Exhibit 8 to Complaint**



**Experian™**
A world of insight

**Prepared for**
DAVID POWELL
**Report number**
3819042148

**Report date**
May 13, 2008
www.experian.com/disputes
Call 1 800 509 8495

**Page 2 of 12**

## Potentially negative items or items for further review

This information is generally removed seven years from the initial missed payment that led to the delinquency. Missed payments and most public record items may remain on the credit report for up to seven years, except Chapters 7, 11 and 12 bankruptcies, which may remain for up to 10 years, and unpaid tax liens, which may remain for up to 15 years. A paid tax lien may remain for up to seven years. Transferred accounts that have not been past due remain up to 10 years after the date the account was transferred.

## Credit items

**ASSET ACCEPTANCE LLC**
PO BOX 2036
WARREN MI 48090
(800) 614-4730
**Partial account number**
3528....

| | | | | |
|---|---|---|---|---|
| *Date opened* Oct 2007 | *Date of status* Nov 2007 | *Type* Installment | *Responsibility* Individual | *Credit limit or original amount* $39 |
| *Reported since* Nov 2007 | *Last reported* Feb 2008 | *Terms* 1 Months | | *Recent balance* $39 as of Feb 2008 |
| | | *Monthly payment* NA | | *High balance* NA |

**Status:** Collection account. $39 past due as of Feb 2008.
**Account history:**
Collection as of Feb 2008, Dec 2007, Nov 2007
This account is scheduled to continue on record until Jan 2011.
**Comment:** *"Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act)."*
**Address identification number:**
1185 13039

**Original creditor: NICOR GAS COMPANY**

**GREEN TREE SERVICING LLC**
332 MINNESOTA ST STE 610
SAINT PAUL MN 55101
No phone number available
**Partial account number**
1477....

| | | | | |
|---|---|---|---|---|
| *Date opened* May 1998 | *Date of status* Nov 2007 | *Type* Installment | *Responsibility* Individual | *Credit limit or original amount* $26,951 |
| *Reported since* Feb 2001 | *Last reported* Apr 2008 | *Terms* 180 Months | | *Recent balance* $21,049 as of Apr 2008 |
| | | *Monthly payment* $296 | | *High balance* NA |

**Status:** Open/Current, was past due 30 days.
**Account history:**
30 days as of Oct 2007, Mar 2006, Feb 2006, Aug 2005
As of Jul 2014, this account is scheduled to go to a positive status.
**Address identification number:**
1185 13039

0028520667   L-554-03153-0106000



The following points out some information about these accounts that is adverse, or that a creditor may generally report for a period of 7-10 years from the date of the first delinquency, depending on your state of residence. The adverse information in these accounts has been printed in brackets or is shaded for your convenience, to help you understand your report. They are not bracketed or shaded this way for creditors. (Note: The account # may be scrambled by the creditor for your protection).

**GREEN TREE #14771672**
345 SAINT PETER ST
SAINT PAUL, MN 55102-1211
(800) 423-9527

| Balance: | $21,305 |
| Date Updated: | 02/2008 |
| High Balance: | $26,951 |
| Terms: | 180 MONTHLY $296 |

| Pay Status: | PAID OR PAYING AS AGREED |
| Account Type: | INSTALLMENT ACCOUNT |
| Responsibility: | INDIVIDUAL ACCOUNT |
| Date Open: | 05/1998 |

Loan Type: SECURED

| Late Payments (48 months) | 30 | 60 | 90+ |
| --- | --- | --- | --- |
| | 3 | 0 | 0 |

Last 48 months

| | '08 | dec | nov | oct | sep | aug | jul | jun | may | apr | mar | feb | '07 | dec | nov | oct | sep | aug | jul | jun | may | apr | mar | feb |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | OK | OK | OK | 30 | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | X | OK | OK | OK |

| | '06 | dec | nov | oct | sep | aug | jul | jun | may | apr | mar | feb | '05 | dec | nov | oct | sep | aug | jul | jun | may | apr | mar | feb |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 30 | 30 | OK | OK | OK | OK | X | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

To dispute online go to: http://transunion.com/disputeonline

---

Consumer Credit Report for DAVID M. POWELL

| File Number: | 187506702 |
| Page: | 7 of 8 |
| Date Issued: | 03/28/2008 |

TransUnion.

**HSBC BANK NV FKA HHLB** Requested On: 09/2007
POB 19360
PORTLAND, OR 97280
(800) 477-6001

**WASHMTL/PROV** Requested On: 08/2007
P O BOX 9007
PLEASANTON, CA 94566
Phone number not available

**WASHMTL/PROV** Requested On: 08/2007
P O BOX 9007
PLEASANTON, CA 94566
Phone number not available

**CHASE MANHATTAN MORTGAGE** Requested On: 07/2007
3415 VISION DR
COLUMBUS, OH 43219
(800) 848-9136

**NATIONAL DEALER WARRANTI** Requested On: 07/2007
3342 MID RIVERS MA
SAINT PETERS, MO 63376
(800) 436-3181

**THE HARTFORD** Requested On: 07/2007
8 FARM SPRINGS RD
FARMINGTON, CT 06032-2526
Phone number not available

**NATIONAL AUTO WARRANTY S** Requested On: 06/2007
50 CENTRE ON THE L
LAKE SAINT LOUIS, MO 63367
Phone number not available

**SHORE FINANCIAL SERVICES** Requested On: 06/2007
770 S ADAMS
#300
BIRMINGHAM, MI 48009
(248) 433-3300

**CITIFINANC AL** Requested On: 04/2007
POB 499
HANOVER, MD 21076
(800) 352-6071

**FIRST PREMIER** Requested On: 03/2007
PO BOX 5114
SIOUX FALLS, SD 57117-5114
(800) 584-7097

**GRACE RECOVERY SERVICES** Requested On: 03/2007
8346 TYLER BLVD
MENTOR, OH 44060-4121
(440) 255-3301

**AIG** Requested On: 05/2006
505 CARR RD
WILMINGTON, DE 19809-2800
Phone number not available

## Account Review Inquiries

The companies listed below obtained information from your consumer report for the purpose of an account review or other business transaction with you. These inquiries are not displayed to anyone but you and will not affect any creditor's decision or any score (except insurance companies may have access to other insurance company inquiries, where permitted by law).

**CITI CARDS CBSD**
P O BOX 6500
CITIBANK
SIOUX FALLS, SD 57117
(800) 950-5118
Requested On: 02/2008

**GREEN TREE SERVICES LLC**
345 SAINT PETER ST
SAINT PAUL, MN 55102
Phone number not available
Requested On: 02/2008

**CAVALRY PORTFOLIO SVCS**
7 SKYLINE DR 3RD FLOOR
HAWTHORNE, NY 10532
(800) 501-0909
Requested On: 01/2008

**CITI CARDS CBSD**
P O BOX 6500
CITIBANK
SIOUX FALLS, SD 57117
(800) 950-5118
Requested On: 01/2008

**CITI CARDS CBSD**
P O BOX 6500
CITIBANK
SIOUX FALLS, SD 57117
(800) 950-5118
Requested On: 12/2007

**CITI CARDS CBSD**
P O BOX 6500
CITIBANK
SIOUX FALLS, SD 57117
(800) 950-5118
Requested On: 11/2007

To dispute online go to: http://transunion.com/disputeonline