IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID POWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 08 C 0097 |
| v. ) | |
| ) | Judge Nordberg |
| GREENTREE, ) | Magistrate Judge Keys |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT
GREEN TREE SERVICING LLC'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT**

Defendant, Green Tree Servicing LLC ("Green Tree Servicing"), by its attorneys, submits this memorandum in support of its motion to dismiss the Second Amended Complaint ("SAC") of plaintiff, David Powell ("Powell").

**I. Introduction**

This is Powell's third lawsuit against Green Tree and, like the two before it[1], Powell's current claims arise from a Retail Installment Contract and Security Agreement ("Agreement") which Powell entered into with WaterWerks Boat Sales, Inc. on May 21, 1998, and which was ultimately assigned to Green Tree. Now represented by appointed counsel, Powell has filed his SAC alleging claims for negligent misrepresentation (Count I) and willful and negligent violation of the Fair Credit Reporting Act ("FCRA") (Counts II and III, respectively).

In his claim for negligent misrepresentation, Powell claims he was told by Green Tree that his request for a loan extension had been approved and then was subsequently told by Green

---

[1] Powell is a serial litigator. In addition to his two prior suits against Green Tree (both of which were dismissed), Powell has filed over thirty other lawsuits against other defendants, primarily financial institutions. See list of other cases filed by Powell attached hereto as Appendix A.

Tree that he had to make an immediate payment on his loan notwithstanding that prior conversation. Powell "immediately made the payment." (SAC, ¶ 22). Powell asserts that as a result of being told the extension had been approved when, in fact, that was not true, he was "forced to make immediate payment using a check-by-phone service" and that he suffered "emotional distress." (SAC, ¶¶ 22-23.) This claim fails because Green Tree is not in the business of supplying information, Plaintiff did not reasonably rely on the purported misrepresentation, and damages for emotional distress are not available under a theory of negligent misrepresentation.

As to his FCRA claims, Powell claims that Green Tree did not provide him with the required notice when it reported negative information about him to certain credit reporting agencies. This claim fails because Green Tree did, in fact, provide the required notice using the model language created by the Board of Governors of the Federal Reserve System. That action constitutes full compliance with FCRA.

For these reasons, Powell's Second Amended Complaint should be dismissed with prejudice.

## II. Background

### A. Allegations Pertinent to Count I of the SAC

On May 21, 1998, Powell entered into a Retail Installment Contract and Security Agreement ("Agreement") with WaterWerks for the purchase of a boat, motor and trailer. (SAC, ¶ 3 and Ex. 1 thereto.) The Agreement was subsequently assigned to Green Tree in March 2003. (SAC, ¶ 10.)

From 2003 until 2006, when Powell requested extensions for his payments due under the Agreement, Green Tree would fax him a form "Addendum" to the Agreement which, when exe-

2

cuted, would authorize an extension. Powell executed and returned those forms. (SAC, ¶ 11.)

From May until October 2007, Powell "continually requested a loan extension" from Green Tree. (SAC, ¶ 16.) On October 24, 2007, Powell contacted Green Tree by telephone and was told by Green Tree's agent, Betes, that Powell's request for a loan extension had been "approved for October 25, 2007." (SAC, ¶¶ 16-17.)

On October 29, 2007, Green Tree's agent, Angela, left a voicemail for Powell indicating that repossession efforts were underway. On October 30, 2007, Green Tree's Betes left a voicemail asking Powell to contact him as soon as possible. That same day, Powell spoke with Betes and Betes demanded that Powell immediately send Green Tree $105.47 and then, later, Betes reduced the amount to $97.56. (SAC, ¶¶ 18-20.)

Powell then made the payment on October 30, 2007, using a "check-by-phone service" which "result[ed] in additional and unforeseen costs to Plaintiff.[2] Powell also claims to have suffered some unspecified "emotional distress." (SAC, ¶¶ 21-23.)

### B. Allegations Pertinent to Counts II and III of the SAC

Powell alleges that Green Tree furnished "negative information" (i.e., that Powell was "delinquent in his payments") to credit reporting agencies Experian and Trans Union. (SAC, ¶ 24.) Powell furthers alleges that Green Tree "never provided Plaintiff written notice that Defendant furnished negative information to Experian and Trans Union." (SAC, ¶ 28.)

Since taking over the account in March 2003, Green Tree has sent monthly billing statements to Powell. On December 11, 2004, Green Tree sent a monthly billing statement to Powell

---

[2] While Powell does not specify those "costs", he apparently is seeking the cost of expediting his payment to Green Tree using a "check-by-phone service." This amount can only be a nominal sum (at worst, in the tens of dollars), and illustrates Powell's propensity to file lawsuits over every "wrong" he perceives, no matter how inconsequential.

at his regular address of P.O. Box 5282, Lansing, Illinois.[3] (Declaration of Cory L. Guindun, attached to Green Tree's Motion as Exhibit A, ¶ 5 and monthly billing statement attached thereto as Exhibit 1.)

That statement contained the following statement under the heading "IMPORTANT INFORMATION AREA":

> **IMPORTANT NOTICE: We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

(Ex. A, Guidun Dec., ¶ 5 and Ex. 1 thereto.)

### III. Argument

#### A. Powell Fails to State a Claim for Negligent Misrepresentation in Count I.

In Count I, Powell alleges a claim for negligent misrepresentation based on the purported misrepresentation by Green Tree that Powell did not have to make a payment on his loan when, in fact, he was required to make that payment. (SAC, ¶ 32.) This claim fails for several reasons.

##### 1. Green Tree is Not in the Business of Supplying Information.

While the so-called "economic loss doctrine" (also known as the Moorman Doctrine in Illinois) generally prohibits the recovery of economic loses under a tort theory, Illinois recognizes a limited exception "where the plaintiff's damages are a proximate result of the negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." Soranno v. New York Life Ins. Co., No. 96 C 7882, 1999 U.S. Dist. LEXIS 1963 at *38 (N.D. Ill. Feb. 22, 1999) (Nordberg, J.). Accord, First Midwest Bank, N.A. v. Stewart Title Guar. Co., 218 Ill. 2d 326, 336, 843 N.E.2d 327, 341 (2006) ("negli-

---

[3] This is the same address which Powell used as his mailing address in his *pro se* Complaint filed in this action.

4

gent misrepresentation exception to the <u>Moorman</u> doctrine is not applicable where the information is 'merely ancillary to the sale of a product.'").

Powell's efforts to state a claim in Count I for negligent misrepresentation fail because Powell has not properly alleged that Green Tree is in the business supplying information for the guidance of others in their business transactions.

> A "precise, case-specific inquiry is required to determine whether a particular enterprise is 'in the business of supplying information for the guidance of others in their business transactions.'"... The Illinois Supreme Court has stated that the appropriate focus of this exception is whether the defendant is truly in the business of supplying information or whether the information is instead provided "ancillary to the sale or in connection with the sale of merchandise or other matter."... If it is the former, the information provider exception applies and the *Moorman* doctrine does not preclude recovery of economic damages; if it is the latter, the exception does not apply and the *Moorman* doctrine precludes the recovery of economic damages.

<u>Haimberg v. R&M Aviation</u>, 5 Fed. Appx. 543, 548 (7th Cir. 2001).

Putting Powell's conclusory allegations aside, Powell essentially alleges that Green Tree is a loan servicing company – it receives payments from debtors and applies those payments to the debtors' outstanding loans. Any information which Green Tree might provide to its customers is clearly ancillary to Green Tree's business. Thus, Green Tree simply is not "in the business of supplying information for the guidance of others in their business transactions" and Powell's claim for negligent misrepresentation fails. <u>Soranno v. New York Life Insurance Co.</u>, No. 96 C 7882 at *41 (insurance agent not in the business of supplying information); <u>First Midwest Bank</u>, 218 Ill. 2d at 336 (title insurer not in business of supplying information); <u>University of Chicago Hosp. v. United Parcel Service</u>, 231 Ill. App. 3d 602, 606, 596 N.E.2d 688, 691 (1st Dist. 1992) (UPS not in the business of supplying information); <u>2314 Lincoln Park West Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.</u>, 136 Ill. 2d 302, 313, 555 N.E.2d 346, 351 (1990) (no claim

5

against an architect because, although an architect supplies information). Compare, Perschall v. Raney, 137 Ill. App. 3d 978, 484 N.E.2d 1286 (1st Dist. 1985) (claim possible against a home inspector).

Count I should be dismissed for this reason alone.

### 2. Powell Has Not Properly Alleged Reasonable Reliance.

In order to state a claim for negligent misrepresentation, a plaintiff must allege, among other things, that he reasonably relied on the truth of the representation at issue. Quinn v. McGraw-Hill Cos., Inc., 168 F.3d 331, 336 (7th Cir. 1999). In this case, the very allegations of the SAC make Powell's purported reliance unreasonable.

As Powell himself alleges,

> From 2003 until 2006, Defendant routinely granted Plaintiff loan extensions upon Plaintiff's request. Specifically, upon Plaintiff's request for an extension, *Defendant would fax Plaintiff a form contract, which Plaintiff would execute and return by facsimile.*

(SAC, § 11.) Indeed, Plaintiff has attached to his SAC a copy of an "Addendum" to the Agreement which was executed in conjunction with a prior request for extension. (SAC, Ex. 2.)

Given a three year history of extensions being granted only by execution of a written form contract memorializing the extension, Powell's purported reliance on an oral representation that he had received an extension is not, on its face, reasonable reliance. Count I should therefore be dismissed for this reason as well.

### 3. Powell Has Not Properly Alleged Damages.

In order to state a claim for negligent misrepresentation, Powell must also allege damage resulting from his reliance on the alleged misrepresentation. Id. Significantly, Powell does *not* allege that he withheld payment based on Green Tree's alleged misrepresentation that no pay-

6

ment was due. If that had happened, and Powell lost his boat due to lack of payment, Powell might conceivably have a claim that he was damaged by the misrepresentation. But in this case, Powell alleges that Green Tree immediately corrected the "misrepresentation" (i.e., told Powell that his payment was, in fact, due) before any real injury occurred.

Indeed, Powell alleges that he "immediately" made payment. (SAC, ¶ 21.) The fact that Powell may have incurred some nominal additional charges in facilitating that timely payment hardly constitutes compensable damages resulting from the alleged misrepresentation. Having timely made his payment, Plaintiff cannot credibly argue that he was damaged as a result of being told not to make his payment.

Recognizing that he has no pecuniary damages, Powell also tries to assert a claim for emotional damages. (SAC, ¶ 23 ("As a result of Defendant's misrepresentations, Plaintiff suffered emotional distress").) However, the Illinois Supreme Court has held that emotional injury is not compensable under a theory of negligent misrepresentation. In Brogan v. Mitchell Int'l., 181 Ill. 2d 178, 185, 692 N.E.2d 276, 278 (1998), the Court held:

> There exists no broad duty to avoid misrepresentations that cause only emotional harm. This court has adopted the Restatement (Second) of Torts, § 311 (1965), which is entitled "Negligent Misrepresentation Involving Risk of Physical Harm." ... Physical harm is defined as encompassing personal injury or property damage, not emotional injury.... The limited nature of negligent misrepresentation liability serves to preserve the proper sphere of contractual-based recovery and prevents the creation of tort liability which could unduly impede the flow of communication in society. With these considerations in mind, we find that the appellate court erred in equating emotional harm with physical injury for purposes of establishing a duty to convey accurate information.

See also, Restatement (Second) of Torts, § 311 ("The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause...").

7

Thus, Powell has failed to allege that he suffered any compensable damages as a result of the purported negligent misrepresentation. Count I should be dismissed for this reason as well.[4]

### B. Powell Fails to State a Claim under FCRA in Counts II and III.

In Counts II and III, Powell asserts claims for willful and negligent violation of Section 1681s-2(a)(7(A)(i), respectively, based on the assertion that Green Tree did not provide him with the required notice when it reported negative information about him to certain credit reporting agencies on October 30, 2007. (SAC.¶ 24.) These claims fail because Green Tree provided the required notice.

Section 1681s-2(a)(7) provides:

> (7) Negative information
>
> > (A) Notice to consumer required
> >
> > > (i) In general
> > >
> > > > If any financial institution that extends credit and regularly and in the ordinary course of business furnishes information to a consumer reporting agency described in section 1681a(p) of this title furnishes negative information to such an agency regarding credit extended to a customer, the financial institution shall provide a notice of such furnishing of negative information, in writing, to the customer.
> > >
> > > (ii) Notice effective for subsequent submissions
> > >
> > > > After providing such notice, the financial institution may submit additional negative information to a consumer reporting agency described in section 1681a(p) of this title with respect to the same transaction, extension of credit,

---

[4] In the event Powell's nominal cost incurred in expediting his loan payment is deemed sufficient to support a claim for negligent misrepresentation, the Court should nonetheless strike Paragraph 23 from the SAC and limit Plaintiff's recovery on Count I, assuming he can otherwise prove his claim, to his actual pecuniary damages.

8

> account, or customer without providing additional notice to the customer.

Section 1681 s-2(a)(7)(B) governs the timing of the notice:

> (B) Time of notice
>
> (i) In general
>
> The notice required under subparagraph (A) shall be provided to the customer *prior to*, or no later than 30 days after, furnishing the negative information to a consumer reporting agency described in section 1681a(p) of this title.

Section 1681s-2(a)(7) also details a method by which notice can be given sufficient to satisfy the statutory obligations:

> (C) Coordination with other disclosures
>
> *The notice required under subparagraph (A) –*
>
> *(i) may be included on or with any notice of default, any billing statement, or any other materials provided to the customer; and*
>
> (ii) must be clear and conspicuous.
>
> (D) *Model disclosure*
>
> (i) Duty of Board [of Governors of the Federal Reserve System] to prepare
>
> *The Board shall prescribe a brief model disclosure a financial institution may use to comply with subparagraph (A), which shall not exceed 30 words.*
>
> \*\*\*
>
> (iii) Compliance using model
>
> *A financial institution shall be deemed to be in compliance with subparagraph (A) if the financial institution uses any such model form prescribed by the Board, or the financial*

9

> *institution uses any such model form and rearranges its format.*
>
> ***
>
> (F)   Safe harbor
>
> A financial institution shall not be liable for failure to perform the duties required by this paragraph if, at the time of the failure, the financial institution maintained reasonable policies and procedures to comply with this paragraph ...

(Emphasis supplied.)

The Board of Governors of the Federal Reserve System has, in fact, promulgated the "model disclosure" contemplated by Section 1681s-2(a)(7)(D). The model notice is:

> Model Notice B-1
>
> We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

12 CFS Part 222, Appendix B.

> Although use of the model notices is not required, a financial institution that is subject to section 623(a)(7) of the FCRA shall be deemed to be in compliance with the notice requirement in section 623(a)(7) of the FCRA if the institution properly uses the model notices in this appendix (as applicable).
>
> ... A financial institution may use Model Notice B-1 if the institution provides the notice prior to furnishing negative information to a nationwide consumer reporting agency.

12 CFS Part 222, Appendix B.

In this case, Green Tree used the model notice on the monthly billing statement sent to Powell on December 11, 2004, well before the reporting at issue in Counts II and III. (Ex. A, Guindun Dec., ¶ 5 and Ex. 1 thereto.) Green Tree's mailing of the model notice constitutes full compliance with Section 1681s-2(a)(7). Moreover, Green Tree's use of the model notice is ob-

10

viously a "reasonable… procedure[] to comply with this paragraph" and thus Green Tree falls within the "safe harbor" created by Section 1681s-2(a)(7)(F). Accordingly, Counts II and III should be dismissed.

## IV. Conclusion

For all the reasons stated above, this Court should dismiss Powell's Second Amended Complaint with prejudice.

Respectfully submitted,

/s/ Marshall L. Blankenship
One of the attorneys for defendant,
Green Tree Servicing LLC

James D. Adducci
Marshall L. Blankenship
Adducci, Dorf, Lehner,
   Mitchell & Blankenship, P.C.
150 N. Michigan Avenue, Suite 2130
Chicago, IL 60601-7524
(312) 781-2800

## Appendix A

# Cases Filed by David Powell

### *In the Northern District of Illinois*

| Case Name | Case Number |
|---|---|
| Powell v. Discover Card | 03 cv 00172 |
| Powell v. Bayview Bank | 03 cv 08233 |
| Powell v. Wayne Liberia | 03 cv 08234 |
| Powell v. First USA | 03 cv 08235 |
| Powell v. Household Fin Corp | 03 cv 08236 |
| Powell v. Chase Manhattan Bk | 04 cv 02257 |
| Powell v. Houstma | 04 cv 04831 |
| Powell v. United Healthcare Insurance Co. | 05 cv 04215 |
| Powell v. Conseco-Greentree | 05 cv 04284 |
| Powell v. Greentree | 07 cv 06503 |
| Powell v. Greentree | 08 cv 00097 |
| Powell v. Citibank South Dakota N.A. | 08 cv 02755 |

### *In the Circuit Court of Cook County*

| Case Name | Case Number |
|---|---|
| Powell, David v. Bank of America | 2008 M6 449 |
| Powell, David v. Americredit | 2007 M6 553 |
| Powell, David v. Road Runner Dawes | 2006 M1 172571 |
| Powell, David v. National City Bank | 2006 M6 2942 |
| Powell, David v. A All Financial Services | 2005 L 66065 |
| Powell, David v. United Health Care | 2005 M6 3172 |
| Powell, David v. Village of Lansing | 2005 M6 2353 |
| Powell, David v. Bayview Bank | 2005 M6 1430 |
| Powell, David v. CT Corporation | 2004 M6 4661 |
| Powell, David v. Sprint PCS | 2004 M6 3889 |
| Powell, David v. Wachovia Bank | 2004 M6 1572 |
| Powell, David v. Capital One | 2004 M6 1574 |
| Powell, David v. Chase Manhattan BK | 2004 M6 761 |
| Powell, David v. Household Bank | 2004 M6 762 |
| Powell, David v. Canadian National | 2004 M6 637 |
| Powell, David v. Bayview Bank | 2003 M6 869 |
| Powell, David v. First USA | 2003 M6 343 |
| Powell, David v. Liberia Wayne | 2003 M6 171 |
| Powell, David v. Discover Card | 2002 M6 6052 |
| Powell, David v. Household Finance | 2002 M6 5489 |
| Powell, David v. Grant Paul | 2002 M6 4133 |
| Powell, David v. Commonwealth Ediso | 2002 M6 975 |

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys for defendant, certifies that on August 4, 2008, he caused a copy of the foregoing Defendant Green Tree Servicing LLC's Memorandum in Support of Motion to Dismiss Second Amended Complaint to be served by ECF upon:

> Gregory S. Otsuka, Esq.
> Paul, Hastings, Janofsky & Walker LLP
> 191 N. Wacker Drive
> Thirtieth Floor
> Chicago, Illinois 60606

/s/ Marshall L. Blankenship