THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID POWELL,           )
                        )
        Plaintiff,      )
                        )  Case No. 08 C 00097
                        )
        v.              )  Magistrate Judge
                        )  Arlander Keys
                        )
GREENTREE,              )
                        )
        Defendant.      )

## MEMORANDUM OPINION AND ORDER

Plaintiff David Powell (Powell) entered into a Retail Installment Contract and Security Agreement (Agreement) for the purchase of a boat, motor, and trailer. Under the terms of the Agreement, Plaintiff was required to make monthly payments to the seller, WaterWerks Boat Sales, Inc. (WaterWerks). As a result of a subsequent assignment of the Agreement to Greentree, Plaintiff became obligated to make monthly payments to Defendant. Plaintiff requested many loan payment extensions over the course of the loan. On the occasion relevant to the litigation, Plaintiff requested from Defendant, an extension of time by which to make a payment. At the time that the request was verbally granted, Defendant's representative assured Plaintiff that no attempts would be made to repossess the boat, motor, or trailer. However, a representative of Greentree later contacted Plaintiff and indicated that efforts would be made to repossess the goods if a reduced monthly payment was not received by Defendant. In



an effort to prevent repossession, Powell made the reduced payment via a check-by-phone service. Not only did this result in Plaintiff incurring additional costs, but he also claims to have suffered emotional distress as a result of Defendant's behavior. Additionally, Powell alleges that Defendant reported his delinquent payment history to Experian and TransUnion, two consumer reporting agencies, in violation of the Fair Credit Reporting Act.

Before the Court is Defendant Green Tree Servicing LLC's Motion to Dismiss Second Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendant's motion to dismiss is granted in part and denied in part.

## Factual Background

The following summary of factual allegations is taken from Plaintiff David Powell's Second Amended Complaint and is deemed true for purposes of this motion. *See Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005).

On May 21, 1998, Plaintiff decided to purchase a boat, motor, and trailer from WaterWerks. (Sec. Am. Compl. at 1.) In so doing, the parties executed the Agreement, the terms of which required Powell to make 180 monthly payments of $296.55, beginning on September 20, 1998. (Pl.'s Ex. 1.) On that same day, the parties executed an Addendum to Consumer Finance Retail

Installment Contract and Security Agreement (Addendum), whereby the first payment due under the Agreement was deferred for 120 days from the date contained in the Agreement. (Pl.'s Ex. 2.)

Green Tree Financial Servicing Corporation, also known as Conseco Servicing (Green Tree Financial)[1], notified Powell on May 26, 1998, that it had purchased Plaintiff's account from WaterWerks; Plaintiff was instructed to begin directing his payments to Green Tree Financial. (Pl.'s Ex. 3.) Throughout the next two years, Plaintiff made payments according to the terms of the Agreement. (Sec. Am. Compl. at 2.) However, beginning in or about 2001, he would request, and Green Tree Financial would grant, loan extensions. (*Id.*) Specifically, Green Tree Financial would allow Plaintiff to forego monthly payments for a period of two months; in doing so, he would not default on the terms of the Agreement. (*Id.*)

Powell's account with Green Tree Financial was subsequently assigned to Defendant.[2] (Sec. Am. Compl. at 2.) But even after the assignment, Powell, from 2003 until 2006, was regularly granted loan extensions upon request. (*Id.* at 3.) The procedure

---

[1] Green Tree Financial, a predecessor-in-interest to Defendant, was owned as of May 26, 1998, by Conseco, Inc. (Sec. Am. Compl. at 2.)

[2] This occurred as a result of Conseco, Inc.'s bankruptcy reorganization. (Sec. Am. Compl. at 2.) As part of the bankruptcy court's order, Green Tree Financial was sold to CFN Investment Holdings LLC and subsequently reorganized and renamed Green Tree Servicing LLC. (*Id.*)

3

was as follows: Plaintiff would request an extension, Defendant's representative would fax Powell a form contract, he would execute the contract, and the contract would be returned by Powell via facsimile. (*Id.* at 3.) To be sure, from 2001 until 2006, Plaintiff requested and received one two-month extension each year. (*Id.*)

On April 25, 2007, Plaintiff requested a loan extension from Defendant. (*Id.*) In the past, he was told that extension requests could not be made until the loan was at least thirty days past due. (Pl.'s Ex. 4.) At that time, he would be sent forms for a two month loan extension; Powell was always granted the extension. (*Id.*) On this day in April, however, his account was only twenty-five days past due and Angela (an employee of Defendant) instructed him to write to David Schwartz (Schwartz), a representative of Defendant, to request the extension. (*Id.*) Plaintiff sent the request and asked that, in the event that the request was not approved, he be provided a reason for the denial (*Id.*)

From May 2007 until October 2007, Powell routinely requested loan extensions. (Sec. Am. Compl. at 3.) On October 24, 2007, Plaintiff telephoned Defendant and spoke with a representative by the name of Betes. (*Id.*) Betes informed Powell that the loan extension request for October 25, 2007, had been approved. (*Id.*) As a result, Defendant would not make any attempts to repossess

4

Plaintiff's boat, motor, or trailer. (*Id.*) Nonetheless, on October 25, 2007, Angela left Plaintiff a voicemail indicating that repossession efforts were indeed underway; Plaintiff was advised to contact Angela to make the necessary arrangements. (*Id.* at 3-4.) Powell was contacted by Betes on October 30, 2007. (*Id.*) Despite being reminded by Plaintiff of their previous conversation in which Plaintiff was told that the extension had been granted and the goods would not be repossessed, Betes demanded that Powell immediately remit $105.47 to Defendant. (*Id.* at 4.) Later that day, Betes again called Powell to inform him that the required payment was actually $97.56, instead of the $105.47 that he had initially indicated. (*Id.*) Because of these telephone conversations, Plaintiff immediately made a payment to Defendant, using a check-by-phone service. (*Id.*) He alleges that as a result of Defendant's actions, he suffered emotional distress. (*Id.*)

In addition, Powell claims that, without first sending him the required notice, Defendant provided Experian and TransUnion with information about his delinquent payment history. (*Id.*) Finally, he contends that Defendant failed to send not only monthly payment invoices but also certain tax documents regarding the Agreement – actions which Plaintiff alleges constitute a pattern of willful noncommunication. (*Id.* at 5.)

Based on the facts described above, Powell filed suit

5

against Greentree. In Count One, Plaintiff alleges negligent misrepresentation. (*Id.*) Powell brings Counts Two and Three pursuant to 15 U.S.C. §§ 1681, et *seq*, and asserts claims of willful and negligent violation, respectively, of the Fair Credit Reporting Act. (*Id.* at 6-7.)

## Standard of Review

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) test the sufficiency of the complaint rather than the merits of the case. *Midwest Gas Servs. v. Ind. Gas Co.*, 317 F.3d 703, 714 (7th Cir. 2003). Accordingly, a court may only grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007); see *Doss v. Clearwater Title* Co., 551 F.3d 634, 639 (7th Cir. 2008); *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). While a sufficient complaint need not give "detailed factual allegations," it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. This ensures that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); see also Fed. R. Civ. P. 8(a). In evaluating a motion to

6

dismiss, a court construes all allegations in the complaint in the light most favorable to the plaintiff, taking all well-pleaded facts and allegations within the complaint as true. *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002); *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). The moving party bears the burden of showing beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. at 45.

## Discussion

Defendant argues that all three Counts of Plaintiff David Powell's Second Amended Complaint lack merit and therefore, its motion to dismiss should be granted. The Court, in turn, addresses each count of the complaint.

### A. Negligent Misrepresentation

In Count One, Plaintiff claims that Defendant negligently misrepresented that he had been granted a loan extension when, in actuality, he had not.

In order to state a claim for negligent misrepresentation in Illinois, Plaintiff must allege "(1) a duty on the part of the defendant to communicate accurate information; (2) false statements of material fact; (3) carelessness or negligence by the defendant in ascertaining the truth of the statements; (4) intention to induce the plaintiff to act; (5) action by the

plaintiff in reliance on the truth of the statements; and (6) damages." *F:A J Kinson v. Underwriters Labs., Inc.*, 492 F.3d 794, 801 (7th Cir. 2007)(citations omitted). In Illinois, suits for purely economic damages, based on a theory of negligent misrepresentation, are generally barred under the *Moorman* doctrine. *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443 (Ill. 1982). However, an exception to this doctrine lies "where [the defendant] is in the business of supplying information for the guidance of others in their business transactions." *Brogan v. Mitchell Int'l*, 692 N.E.2d 276, 278 (Ill. 1998); *Moorman Mfg. Co.*, 435 N.E.2d at 452. Courts, in conducting a case-specific analysis to determine whether a party is in the business of supplying information, focus "on the nature of the information and its relation to the particular type of business conducted." *Coleman Cable Sys., Inc. v. Shell Oil Co.*, 847 F.Supp. 93, 95 (N.D. Ill. 1994).

In the case at bar, only three elements are at issue. Specifically, the parties challenge whether Defendant is "in the business of supplying information," whether Plaintiff properly alleged reasonable reliance, and whether damages were properly pled. The Court finds that making a determination of whether Defendant is in the business of supplying information is improper at this stage of the proceedings. Further, Plaintiff has met the minimal burden required of motions made pursuant to Rule

8

12(b)(6).

Powell alleges that, "as a loan servicing company, Defendant is in the business of providing facts and information for purchasers and sellers of consumer products." Greentree maintains that a loan servicer is one who "receives payments from debtors and applies those payments to the debtors' outstanding loans." Therefore, Greentree maintains, Plaintiff's own assertions reveal that Defendant is not in the business of supplying information. However, the Court must view the facts in the light most favorable to Plaintiff. Based on Plaintiff's assertions, it is entirely possible that Greentree is, as Powell alleged, indeed in the business of supplying information. Consequently, the Court finds that, in this instance, this issue requires a fact intensive inquiry not properly resolved on a 12(b)(6) motion.

Neither is the Court persuaded by Defendant's arguments that Plaintiff's pleadings fail to meet the *Twombly* standard. Though Powell did not plead much more than what is required, the Court cannot say that he pled only the labels, conclusions, and formulaic recitations that the Supreme Court cautioned against. Indeed, Plaintiff alleged that the representations were made, not by a stranger, but by Defendant's own employees. Because consumers are oftentimes unaware of the workings of a particular company, they look to the company's employees for guidance.

9

Thus, it was reasonable for Powell to rely on the representations that the employee made. Further, the Court finds that Powell adequately pled damages; he said that he incurred, *inter alia*, additional costs as a result of utilizing the check-by-phone service.

At this juncture of the proceedings, there exists a genuine issue of material fact regarding the issue of negligent misrepresentation. Consequently, Defendant's motion to dismiss Count One is denied.

**B.   Violations of the Fair Credit Reporting Act**

Counts Two and Three of Plaintiff David Powell's Second Amended Complaint allege willful and negligent violations, respectively, of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*.

The Fair Credit Reporting Act was enacted to ensure "fair and accurate credit reporting." 15 U.S.C. § 1681(a)(1). As such, Congress enumerated the duties imposed on, *inter alia*, "furnishers" of credit information to consumer reporting agencies. *See* 15 U.S.C. § 1681s-2. Specifically, the relevant part of the statute provides,

> If any financial institution that extends credit and regularly and in the ordinary course of business furnishes information to a consumer reporting agency[3] .

---

[3] A consumer reporting agency is defined as,

> any person which, for monetary fees, dues, or on a

10

> . . furnishes negative information to such an agency regarding credit extended to a customer, the financial institution shall provide a notice of such furnishing of negative information, in writing, to the customer.

15 U.S.C. § 1681s-2(a)(7).

Plaintiff alleges that, in providing Experian and TransUnion (two consumer reporting agencies) information about his payment delinquencies, without first providing him adequate notice, Defendant violated the statute, both willfully and negligently. Not surprisingly, Defendant argues that, prior to providing the consumer reporting agencies with the information, Powell was furnished with the appropriate notice. The Court need not reach the arguments of either side, however, as "[i]t is undisputed that there is no private right of action under § 1681s-2(a)." *Rollins v. Peoples Gas Light & Coke Co.*, 379 F. Supp. 2d 964, 967 (N.D. Ill. 2005); *see also* 15 U.S.C. § 1681s-2(c); *Perry v. First*

---

> cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

The statute further defines a person as, "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b).

*Nat'l Bank*, 459 F.3d 816, 822, (7th Cir. 2006); *Lang v. TCF Nat'l Bank*, No. 06 C 1058, 2008 U.S. Dist. LEXIS 101721, at *9-10 (N.D. Ill. Dec. 1, 2008)("No private right of action exists . . . for violations of section 1681s-2(a).") (citations omitted). Consequently, even if Powell could prove a violation of section 1681s-2(a), it is not actionable in this lawsuit. Counts Two and Three are, therefore, dismissed.

## Conclusion

For the reasons set forth above, the Court grants in part and denies in part the motion of Defendant Greentree to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Date: March 16, 2009         E N T E R E D:

_____
MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT